**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| HABIB BAHARI, et ux. | : | |
| | : | |
| v. | : | Civil No. CCB-05-2085 |
| | : | |
| COUNTRYWIDE HOME LOANS, et al. | : | |
| | : | |

**MEMORANDUM**

Plaintiffs Habib Bahari and Rohangiz Bahari filed a complaint against Countrywide Home Loans, Inc. ("Countrywide"), Litton Loan Servicing, LP ("Litton"), Allstate Insurance Company ("Allstate"), Newport Insurance Company ("Newport"), and Underwriters at Lloyd's London ("Lloyd's") in the Circuit Court for Baltimore City on or about June 28, 2005. The Baharis' complaint alleges several causes of action against the defendants, including: (1) breach of contract (Counts I-IX); (2) breach of covenants of good faith and fair dealing (Counts X-XVII); (3) fraud (Counts XVIII-XXI); (4) torts arising from breach of contract (Counts XXI-XXIII); (5) negligent misrepresentation (Counts XXIV-XXVI); (6) conversion (Counts XXVII-XXX, XXXIX-XL); (7) civil conspiracy (Counts XXXI); (8) unfair or deceptive trade practices (Counts XXXII-XXXIV); (9) violations of the Racketeer Influence and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962 *et seq.* (Counts XXXV-XXXVII); (10) defamation of credit (Count XXXVIII); and (11) unjust enrichment (Count XLI).

This case was removed to federal court with the consent of all defendants on or about August 1, 2005.

Allstate has filed a motion to dismiss all four claims against it, which include breach of

1

contract, negligent misrepresentation, civil conspiracy, and violation of Maryland's unfair or deceptive trade practices statute.  Allstate avers that the Baharis have failed to state a claim upon which relief may be granted or, in the alternative, the court should grant summary judgment in favor of Allstate.  Lloyd's also has filed a motion to dismiss the Baharis' claims of conspiracy and conversion.  In the alternative, Lloyd's seeks judgment on the pleadings.  The Baharis have filed a motion to remand this case to the Circuit Court of Baltimore City, arguing that removal to this court was improper.  The Baharis also ask the court to order the defendants to pay the Baharis their just costs and expenses, including attorneys' fees, incurred as a result of the removal of this case.  For the reasons that follow, I will grant the defendants' motions to dismiss and deny the plaintiffs' motion to remand.

## BACKGROUND

Plaintiffs are owners of a home located at 3810 Terrawood Court, Rockville, Maryland 20853, which they purchased on February 27, 2001.  On that date, plaintiffs executed a note and mortgage loan agreement with Countrywide Home Loans, Inc.  As part of the loan agreement, the Baharis were required to have property insurance on the home. Countrywide was to collect and disburse the premium payments to the Baharis' escrow account each month and make one lump-sum insurance payment each year.

Plaintiffs purchased property hazard insurance from Allstate Insurance Company, with a policy term of February 20, 2001 to February 20, 2002.  Plaintiffs paid $687.00 for the policy.  The named insured on the policy was Habib Bahari with a mailing address and "Location of

Property Insured" listed as 16300 Georgia Avenue, Olney, MD 20832.[1]

After receiving inspection results concerning the occupancy and physical condition of the property that were not in accordance with Allstate's risk and underwriting standards, Allstate mailed a Notice of Cancellation dated March 10, 2001 to Habib Bahari at the address listed on the policy.  The notice indicated that the reasons for cancellation of the policy were vacancy and unacceptable physical condition of the building such as dry rot, peeling paint, missing handrails, broken glass on windows and doors, and boarded up windows.  The Baharis dispute these allegations, asserting that the property was not, in fact, vacant.  The notice also stated that cancellation of the policy was effective at 12:01 a.m. on April 30, 2001.  A letter advising of the notice of cancellation was also sent to the mortgagee listed on the "declarations" page of the policy.  Upon mailing, the cancellation notice was never returned to Allstate.  However, the Baharis claim that they never received the cancellation notice from either Allstate or the mortgagee, Countrywide, and were not aware that their policy had been cancelled until they contacted Allstate "sometime" in 2003.

On March 13, 2001, Allstate issued a check in the amount of $557.00 made payable to Habib Bahari for the unused portion of his premium and again noting the effective termination date.  Allstate mailed the return premium check the next day to its insured at the address listed on the insurance policy.  On April 30, 2001 Allstate cancelled the policy issued to the Baharis.

Countrywide received notice that the Baharis' property insurance had been cancelled by

---

[1] According to the complaint, the Baharis' address changed from 16300 Georgia Avenue, Olney, MD 20832 to 3810 Terrawood Ct., Rockville, MD 20853.  The former address, which was the address at the time the Baharis purchased the property, changed due to redistricting.  Compl. ¶ 10.

Allstate, but failed to notify the Baharis of this fact. Instead, Countrywide purchased three additional property hazard insurance policies and charged the Baharis' escrow account accordingly: April 2002 coverage for $1,829.00, June 2002 coverage for $6,078.00 (based on the belief that the property was vacant), and July 2002 coverage for $1,825.00. Each policy had a one-year term. The Baharis allege that Countrywide failed to notify them about the April, June, and July coverage.

On or about December 5, 2002, the Baharis received a letter from Litton Loan Servicing, LP stating that Countrywide transferred servicing of the loan to Litton effective December 1, 2002. On November 1, 2002, Litton sent "Evidence of Insurance" on the property purchased by Litton through Underwriters at Lloyd's London with an effective date of November 1, 2002 through November 1, 2003 and a total premium of $3,922.80. Litton purchased this policy from Lloyd's despite the fact that Countrywide had already purchased three property hazard insurance policies for the Baharis' home, and the property should have been covered through July 2003.

**ANALYSIS**

1.   Motion to Remand

The Baharis have filed a motion to remand this case to the Circuit Court of Baltimore City, arguing that removal to this court was improper based on the Supreme Court's decision in *Tafflin v. Levitt,* 493 U.S. 455 (1990). It is not necessary for the court to address the merits of the Baharis' motion for remand, however, because the Baharis are procedurally barred from seeking remand at this time.

Title 28 U.S.C. § 1447(c) provides:

"A motion to remand the case on the basis of any defect in the removal procedure must be made within thirty days after the filing of the notice of removal under

4

section 1446(a). If at any time before final judgment it appears that the district
court lacks subject matter jurisdiction, the case shall be remanded."

Based on the plain language of § 1447(c), the plaintiffs have waived their right to removal. There is no question that the court has subject matter jurisdiction over the claims at issue. Title 18 U.S.C. § 1965(a) empowers federal courts to hear RICO claims, and federal courts are empowered to exercise pendent jurisdiction over state law claims asserted in conjunction with federal questions. *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 628 (4th Cir. 1997), *citing United Mine Workers v. Gibbs,* 383 U.S. 715 (1966). Moreover, by acknowledging that this court has concurrent jurisdiction over civil RICO claims, the Baharis have conceded the subject matter jurisdiction of this court. Because subject matter jurisdiction is not lacking, the 30 day time limit established by the first sentence in 28 U.S.C. § 1447(c) controls. *See Ayers v. ARA Health Services, Inc.,* 918 F. Supp. 143, 146-47 (D.Md. 1995). In this case, the defendants filed their notice of removal on July 29, 2005. The Baharis did not file their motion to remand until October 18, 2005, more than 80 days later. The Baharis' motion is therefore untimely under § 1447(c), and their belated objection to removal will be deemed waived. Accordingly, the Baharis' motion for remand will be denied.

The Baharis' motion for remand also fails on the merits. Defendants properly removed this case from state to federal court pursuant to 28 U.S.C. § 1441(a), which states:

Except as otherwise provided by Act of Congress, any civil action brought in a
State Court of which the District Courts of the United States have original
jurisdiction, may be removed by the defendant or defendants, to a District Court
of the United States for the District and Division embracing the place where such
action is pending.

Removal in this case is proper because the court has original jurisdiction pursuant to 28 U.S.C. § 1331 over the Baharis' claims arising under federal law. Specifically, the Baharis have alleged

claims under RICO, and such claims necessarily involve the determination of substantial questions of federal law.

The Baharis, citing *Tafflin*, assert that the case should be remanded to state court. *Tafflin* holds that state courts have concurrent jurisdiction with federal courts over civil RICO claims. According to the plaintiffs, where there is concurrent jurisdiction and where plaintiff elects to file suit in state court, defendants lose their right to remove based on the presence of a federal question.

*Tafflin,* however, merely states that both the state court and this court have jurisdiction to hear the case. Courts in the Fourth Circuit have long held that concurrent jurisdiction does not preclude a defendant's right to remove an action to federal court. Where federal and state courts have concurrent jurisdiction, Congress must expressly provide for nonremovability to prevent removal. *Whitfield v. Fed. Crop Ins. Corp.,* 557 F.2d 413, 414 (4th Cir. 1977); *see also Callison v. Charleston Area Med. Ctr.*, 909 F.Supp. 391, 394 (S.D.W.Va. 1995); *Gleichauf v. Ginsberg,* 859 F.Supp. 229, 231 (S.D.W.Va. 1994). Congress has not expressly provided that RICO actions are not removable. To the contrary, the RICO statute provides: "Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." Thus, because the defendants properly removed this case to federal court, the court will deny the Baharis' motion to remand.

2.      Motions to Dismiss

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of

a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244. In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. *See, e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions); *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).[2]

    A.    Allstate

---

[2] Lloyd's filed a motion for judgment on the pleadings pursuant to F.R.C.P. 12(c). It would appear, however, that a motion for judgment on the pleadings is inappropriate, because the pleadings have not been closed by an answer from the defendant. *Little v. Federal Bureau of Investigation,* 793 F.Supp. 652, 653 (D.Md. 1992); *Biser v. Town of Bel Air, Maryland,* 778 F.Supp. 249, 250 (D.Md. 1991). This is a distinction without a difference, however, because a motion for judgment on the pleadings is subject to the same standards as a Rule 12(b)(6) motion to dismiss. *Fare Deals, LTD v. Glorioso,* 217 F.Supp. 670, 671 (D.Md. 2002). Where, as here, "the gravamen of the motion is a challenge to the legal sufficiency of the complaint," the court will treat the 12(c) motion as "fungible with the Rule 12(b)(6) motion." *Little,* 793 F.Supp. at 653. Accordingly, Lloyd's motion will be considered under Rule 12(b)(6).

7

It is not necessary for the court to address the merits of the Baharis' claims against Allstate because the Baharis have filed the instant suit outside the relevant statute of limitations period.

Under Maryland law, a civil cause of action must be filed within three years of the date the cause of action accrues. Specifically, Md. Code Ann., Cts. & Jud. Proc. § 5-101 (1998) provides: "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Maryland also recognizes the "discovery rule" in all civil actions. Under the discovery rule, "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser,* 290 Md. 631, 636 (Md. 1981). The discovery rule requires that the plaintiff must have notice of a claim to start the running of the statute of limitations. The Maryland Court of Appeals has defined such notice as "express cognition, or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued." *Poffenberger,* 290 Md. at 637 (internal citations omitted).

All of the Baharis' claims against Allstate concern the insurance policy that Allstate cancelled on April 30, 2001, well outside the applicable statute of limitations for the Baharis' complaint, which was filed in June 2005. Even assuming that the Baharis were not aware of the cancellation of the policy in April 2001, the term of the Baharis' insurance policy was February 20, 2001 through February 20, 2002. *See* Compl., Ex. A. The Baharis only paid the premium for one year of their policy, and their lender collected three extra months of insurance payments.

8

Compl. ¶¶ 15-16, Opp. Mem. 5.  It is significant that the Baharis do not allege that they ever received any renewal notice, any renewal policy, or paid any additional premiums for the Allstate policy.  Hence, the facts alleged in the Baharis' complaint are sufficient to demonstrate that they knew the policy was cancelled in February 2002 or, even assuming that the Baharis' lender paid an additional three months of premiums, May 2002.  Although the Baharis now contend that they did not have actual notice of the cancellation until "sometime" in 2003, the allegations pleaded in the complaint demonstrate that the Baharis had facts sufficient for inquiry notice regarding cancellation at the latest on May 20, 2002.  As of that date, the Baharis should have inquired into the status of their insurance policy with Allstate. As the Baharis' complaint against Allstate was not filed until June 22, 2005, the three-year statute of limitations bars the Baharis' claim.  The court will dismiss the Baharis' complaint against Allstate.

    B.    Lloyd's[3]

        1.    Conversion

The Baharis, in Count XL, bring a "separate and distinct count for conversion" against Lloyd's.  Compl. ¶ 373.  Plaintiffs assert that Litton, without the knowledge of the Baharis, charged plaintiffs' escrow account in the amount of $3,922.80 for the purchase of a hazard insurance policy from Lloyd's.  In other words, the Baharis seek recovery of the monies paid as the premium for the insurance policy.

---

[3] Lloyd's argues that the Baharis' complaint should be dismissed pursuant to F.R.C.P. 12(b)(5), which enables a defendant to file a motion to dismiss when the plaintiff failed to effect proper service of process.  Lloyd's also argues that the Baharis' complaint should be dismissed pursuant to F.R.C.P. 12(b)(4), because process was insufficient.  Under other circumstances, the court would direct the plaintiffs to re-serve the complaint and summons on Lloyd's within 30 days.  However, because the court dismisses the Baharis' complaint against Lloyd's on other grounds, additional service is not necessary.

In Maryland, "money, i.e., currency, is not subject to a claim of conversion unless the plaintiff seeks to recover specific segregated or identifiable funds." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 834 n.3 (Md. 2004). Accordingly, to succeed, the Baharis must show that Lloyd's has an obligation to return the specific bills that were charged to the Baharis' account. *Id.* By contrast, if Lloyd's merely owes a debt of money, which could be satisfied by check or other currency besides the specific bills that the Baharis tendered, the Baharis' cause of action for conversion must fail. *Id.* Further, in order for a conversion claim to succeed, the Baharis must show that the transferred money had not been commingled with other funds. *Allied Investment Corp. v. Jasen,* 731 A.2d 957, 967 (Md. 1999). Indeed, when funds are commingled, "the cash loses its specific identity." *Id.*

In this case, the Baharis cannot "point to any particular currency as the subject of the purported conversion," so the funds are not readily identifiable. *Coots v. Allstate Life Ins. Co.,* 313 F.Supp.2d 539, 543 (D.Md. 2004). Moreover, the Baharis do not allege that the premium for the insurance policy was maintained by Lloyd's in a separate, segregated account. Thus, any proceeds that Lloyd's may have retained from the Baharis' escrow account are not specifically identifiable enough to be the subject of a conversion claim. The court therefore will dismiss the Baharis' conversion claim against Lloyd's.

      2.      Civil Conspiracy

In their complaint, the Baharis allege a civil conspiracy by Countrywide, Allstate, Newport, Litton, and Lloyd's to "intentionally, purposefully and wrongfully charge Plaintiffs' escrow account with multiple, duplicative, and exorbitant Property hazard insurances, to fail to provide proper notices as required under the Loan Agreement or insurance contract, to force and

intimidate Plaintiffs into entering into unconscionable contract, in order to unlawfully, wrongfully, and improperly foreclose on the Plaintiffs' Property." Compl. ¶ 323.[4]

Under Maryland law, "[a] civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Green v. Washington Suburban Sanitary Comm'n,* 269 A.2d 815, 824 (Md. 1970).

Lloyd's argues that it cannot be held liable for conspiracy because it did not itself commit an unlawful act in furtherance of the conspiracy. According to Lloyd's, it did nothing more than issue a legal and legitimate insurance policy, as requested by Litton, for the Baharis' property. This, however, does not absolve Lloyd's of potential liability. Maryland law does not require that every conspirator individually commit an unlawful act. To the contrary, a participant in the conspiracy may be held civilly liable as long as some act was performed in furtherance of the conspiracy, even if performed by another participant. *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.,* 665 A.2d 1038, 1044 (Md. 1995).

Nonetheless, the allegations in the complaint are not sufficient to establish that Lloyd's can be held to be a member of the alleged conspiracy. "Conspiracy is not a tort on its own, but is dependent on some underlying tort that caused injury to the plaintiff." *Hill v. Brush Engineered Materials, Inc.,* 383 F.Supp.2d 814, 822 (D.Md. 2005). Indeed, "[t]ort liability arising from a

---

[4] Despite naming Lloyd's in ¶ 323, the Baharis fail to seek any judgment against Lloyd's, instead naming all other defendants. Plaintiffs assert that this was an inadvertent clerical error. Because this litigation is in its early stages, I will assume that the plaintiffs meant to seek judgment against Lloyd's, in addition to the other named defendants.

conspiracy presupposes that the coconspirator is legally capable of committing a tort, that is, that she owes a duty to the plaintiff recognized by law and is potentially subject to liability for breach of that duty." *BEP, Inc. v. Atkinson,* 174 F.Supp.2d 400, 409 (D.Md., 2001).  The Baharis have failed to allege any duty owed by Lloyd's to the plaintiffs.  Instead, the only duties alleged by the plaintiffs in Count XXI of the complaint are the contractual duties owed by Allstate, Countrywide, and Litton. Accordingly, "[a] cause of action for civil conspiracy may therefore not arise," where, as here, "the alleged conspirator, though allegedly a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing." *Id.*  For the foregoing reasons, the court will dismiss the plaintiffs' complaint against Lloyd's.

    A separate order follows.

| December 16, 2005 | /s/ |
|---|---|
| Date | Catherine C. Blake |
| | United States District Judge |